**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**LARRY THOMAS**                                                            **PLAINTIFF**

**vs.**                                    **NO.  3:04-CV-00309 GTE**

**VINCENT BRAZILE, J. B. HAUER and**
**UNION PACIFIC RAILROAD CO.**                                      **DEFENDANTS**

## ORDER DENYING SUMMARY JUDGMENT

Before the Court is a Motion for Summary Judgment filed by Defendants Vincent Bazile,

J.B. Hauer, and Union Pacific Railroad Company ("UP"), to which Plaintiff has responded.  For

the reasons stated below, the Court concludes that the motion will be denied.

## OVERVIEW OF COMPLAINT

Plaintiff contends in his Complaint that the individual Defendants, acting as employees

and agents of UP and under color of law "unlawfully procured the arrest and detention of

Plaintiff when the facts known to them would have caused any reasonable law enforcement

officer not to seek his arrest." (Complaint at ¶ 6).  Plaintiff further alleges that the individual

Defendants "conducted a search of Plaintiff's home in Wynne, Arkansas, in excess of that

authorized by the warrant and that they caused Plaintiff to be detained and without his liberty for

approximately four hours." (*Id.*)  Finally, Plaintiff contends that the Defendants "knew or should

have known that Plaintiff had committed no crime but they pursued his arrest and detention for

the purpose of promoting the economic interests of the UP." (Complaint at ¶ 7).

Plaintiff was accused of theft and hired lawyers to provide a defense to the charge.  The

prosecution ultimately dismissed the charges and the time for refiling them passed on July 18,

2003.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and alleges violations of the

- 1 -

First, Fourth, Fifth, Sixth, Seventh, Eighth and Fourteenth Amendments of the United States

Constitution.  He also claims that UP was negligent in the hiring and supervision of the

individual Defendants.  Plaintiff seeks damages for, among other things, the loss of his job, loss

of income, mental anguish, and legal fees for defending the false charges.  Plaintiff also seeks an

award of punitive damages.

## SUMMARY JUDGMENT FACTUAL RECORD

The Court notes that the Motion for Summary Judgment fails to include a separate

Statement of Undisputed Material Facts, as required by Local Rule 56.1(a).  The Court elects to

resolve the motion on the merits, but in the future requests that counsel comply with the Local

Rule.

Defendants Vincent Bazile and J.B. Hauer are Union Pacific Special Agents.  A Union

Pacific Special Agent is a certified law enforcement officer who is employed by the UP and who

has authority over crimes which occur on Union Pacific property.  On December 4, 2001, some

television sets were taken from a railroad boxcar.  On February 11, 2002, a Marion Police Court

Judge issued a warrant for Plaintiff's arrest, charging him with theft of property (the television

sets), a Class A Misdemeanor.  The Arrest Record, dated February 12, 2002, lists the

Complainant's Name as "Vincent Bazile dba Union Pacific Railroad" and the witness to the

arrest as John Hauer.  (Exhs. 1 & 3 to Def.'s Motion).

Defendant Special Agent Bazile states in his Affidavit that on December 4, 2001, after

learning that a load of televisions was parked on the side of the H& M Contractors' building in

Marion, Arkansas, he investigated and upon his arrival found a railroad car parked with its doors

wide open.  Five or ten television sets appeared to be missing.  Further investigation revealed that

H& M employees Joseph Clark and Tyson Massengill had been involved in the theft of at least

some of the television sets.  In an effort to confirm this information, Defendants Bazile and

Hauer went to Joseph Clark's home on or around January 26, 2002, where Erica Clark, Mr. Clark's wife, granted them permission to search the home. The search revealed a 27" television set with a serial number matching one of the missing televisions. (Bazile Affidavit, Def.'s Exh. 2 at ¶¶ 3-4).

On January 29, 2002, Mr. Bazile contends that he continued the investigation by interviewing Tyson Massengill's girlfriend, Jennifer Shipp. Ms. Shipp's statement, which was attached to the arrest warrant, indicates the following:   Ms. Shipp reported that she drove her boyfriend's truck to the rail yard to take him lunch. She then rode in the truck with Mr. Massengill and "Joey"[1] out to the Receiving Yard where they picked up three television sets that had been placed in the grass. Ms. Shipp understood the televisions had been removed from a rail container. Ms. Shipp then drove Mr. Massengill's truck back to the apartment they shared, unloaded the television sets and took them inside. Ms. Shipp stated Mr. Massengill and "Joey" came over to the house together after work, while she was asleep, and that when she woke up two of the three television sets were gone. She further testified that her boyfriend got rid of the remaining television set later, after hearing rumors about the UP agents going to people's houses. Ms. Shipp doesn't mention the Plaintiff until the end of her statement, at which point she brings up his name. The pertinent portion of her statement, in its entirety, reads:

> Q:  When you got home, you took the three televisions. There were three?
> A:  Right.
>
> Q:  You took those into the apartment and then you went to bed. Is that correct?
> A:  But see, I'm pretty sure that Larry, which was also on his crew, he got one.
>
> Q:  What is Larry? What does he do?
> A:  He's the engineer.

---

[1] Presumably, Ms. Shipp is referring to Joseph Clark, although she stated that she did not know his last name.

Q:  Why do you think he got one of the televisions?
A:  I'm pretty sure that I remember Tyson saying that Larry got one, and Joey got one, and we had one.

Q:  Did you get Larry's full name?
A:  Larry Thomas.  I think.  He lives in Wynne.

(Shipp Statement, attached as part of Exhibit A to Affidavit for Arrest Warrant, Exh. 3 to Def.'s motion).

Defendants also support their motion with the Affidavit of Gerald Boyd Martin, a Detective Sergeant with the Marion Police Department, who presented the arrest warrant to Marion District Court Judge Fred Thorn.  Mr. Martin indicates that the information received from Union Pacific's Special Agents caused the Marion Police Department to determine that the Plaintiff, along with Tyson Messengill, Jennifer Shipp, and Joseph Clark were all suspected of stealing the television sets.

On February 1, 2002, in a written statement given to Detective Martin, Mr. Clark also implicated Plaintiff by stating he and Mr. Massengill removed the televisions with the "specific intent of giving one of the stolen televisions to the Plaintiff" and that the Plaintiff later drove to Mr. Massengill's apartment to pick up one of the stolen television sets. (Martin Affidavit, Exhibit 4 to Def.'s motion).

On February 12, 2002, Plaintiff was placed under arrest for theft.  The charges against the Plaintiff were ultimately dropped, apparently after several scheduled trial dates at each of which the Plaintiff appeared, with witnesses, to defend himself, but his co-defendants failed to appear. The record is not clear as to the outcome of the charges against the other two defendants.

Plaintiff has attached his own Affidavit, which questions why the Defendants failed to advise the Marion Police Department that he was with Pat Kelly, a ramp manager, the entire night the thefts occurred and why no effort was make to conduct any investigation beyond

obtaining the statements of Shipp and Clark.  Plaintiff states that following the theft but before

his arrest, he had been asked by ramp manager, Joann Whitehead, to conduct a performance

evaluation of Mr. Clark.  Plaintiff reported that Mr. Clark's "performance was unsatisfactory,

because he was a danger to himself and his conductor."  Following Plaintiff's evaluation, Mr.

Clark vowed in front of ramp manger, Pat Kelly, to get revenge.  (Plaintiff's Affidavit, attached

to Plaintiff's response).

As a result of being arrested for theft, Plaintiff has been prohibited by UP from returning

to its premises, the effect of which is that Plaintiff can no longer work at the UP Intermodal

Facility for H& M.  Thus, Plaintiff contends, the theft charge in question resulted in his losing his

job with H&M as Head Engineer, despite the fact that he was never convicted of a crime.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when, in reviewing the evidence in the light most

favorable to the non-moving party, there is no genuine issue as to any material fact, so that the

dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir.

1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in

determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for
> trial-- whether, in other words, there are genuine factual issues that properly can be
> resolved only by a finder of fact because they may reasonably be resolved in favor of
> either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary

judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to
> demonstrate, i.e., '[to] point[] out to the District Court,' that the record
> does not disclose a genuine dispute on a material fact.  It is enough for the

> movant to bring up the fact that the record does not contain such an issue
> and to identify that part of the record which bears out his assertion. Once
> this is done, his burden is discharged, and, if the record in fact bears out
> the claim that no genuine dispute exists on any material fact, it is then the
> respondent's burden to set forth affirmative evidence, specific facts,
> showing that there is a genuine dispute on that issue. If the respondent
> fails to carry that burden, summary judgment should be granted.

*Id*. at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th

Cir. 1988) (citations omitted)(brackets in original)).

"A party seeking summary judgment always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of [the record] . . .

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the moving party

is not required to support its motion with affidavits or other similar materials negating the

opponent's claim. *Id*.

## DISCUSSION

In their motion papers, both parties focus on whether the proof is sufficient with respect

to two of the five elements of a malicious prosecution claim: the probable cause and malice

elements. Neither party mentions any of the constitutional claims raised by Plaintiff. The Court

does not know whether Plaintiff has abandoned some or all of those claims or still intends to

pursue them. The Court directs Plaintiff to so advise it when he files his trial brief in this case.

To prevail on a malicious prosecution claim, Plaintiff must prove: (1) a proceeding

instituted or continued by the Defendant against the Plaintiff; (2) the termination of the

proceeding in favor of the Plaintiff; (3) the absence of probable cause for the proceeding; (4)

malice on the part of the Defendant and (5) damages. *See Hollingsworth v. First National Bank

& Trust Co.*, 311 Ark. 637, 640 (1993). Defendants argue that Plaintiff's Complaint should be

dismissed because there was probable cause for Plaintiff's arrest and because there is no

indication Defendants acted with malice or otherwise inappropriately with regard to Plaintiff's

arrest.  The Court disagrees.  On this summary judgment record, the Court cannot conclude that

these two elements are lacking as a matter of law.

 Plaintiff also contends that even if probable cause existed for the initiation of the

criminal prosecution, probable cause was lacking to continue the prosecution.  Arkansas law

permits a malicious prosecution claim for either the initiation or continuation of proceedings

against a plaintiff.  *See Kellerman v. Zeno*, 64 Ark. App. 79, 983 S.W.2d 136 (1998).

Ordinarily, whether probable cause existed for an arrest and to seek a prosecution is a fact

question.   Arkansas defines the term "probable cause" "as a state of facts or credible information

which would induce an ordinarily cautious person to believe that the accused is guilty of the

crimes charged."  *Wal-Mart Stores, Inc. v. Thomas*, 76 Ark. App. 33, 38 61 S.W.3d 844 (2001).

Further, "ordinary caution is a standard of reasonableness that presents an issue for the trier of

fact when the proof is in dispute or subject to different interpretations."  *Id*.

The initial proof linking Plaintiff to the crime was shaky at best.  Neither Ms. Shipp nor

Mr. Clark implicated Plaintiff in the actual theft.  Ms. Shipp's testimony was less than absolute,

indicating that "she thought she remembered" her boyfriend telling her Plaintiff was getting one

of the televisions.  Arguably, her hearsay testimony, without more, would not induce a person of

ordinary caution to believe Plaintiff guilty of theft.  Finally, as noted, Mr. Clark's testimony does

not directly implicate Plaintiff in the actual theft.  Mr. Clark recounted that he stole the

televisions with the specific intent of "giving one" to Plaintiff and that Plaintiff drove to Mr.

Massengill's apartment to pick up the television.  The record is devoid of any mention of the

circumstances which motivated Mr. Clark to give Plaintiff a television or whether Plaintiff knew

the television had been stolen.  That Mr. Clark may have stolen the televisions with the specific

intent to benefit Plaintiff does not make the Plaintiff guilty of theft.   In sum, no witness

implicated Plaintiff in the actual theft.   Plaintiff fully cooperated with the investigation,

permitted a search of his residence, and no television was found.  Thus, only the testimony of

Ms. Shipps and Mr. Clark supported the probable cause for his arrest.

Even assuming that probable cause existed for the initial arrest, at a minimum an issue of

fact exists as to whether probable cause existed for the Defendants' continued pursuit of criminal

charges against Plaintiff, charges which resulted in Plaintiff being forever barred from UP's

facilities and the loss of his job, for no apparent reason other than the fact that he was charged

with theft.

Plaintiff contends that the Defendants failed and refused to investigate either his alibi or

Mr. Clark's incentive to name him as a recipient of one of the stolen television sets.  Indeed, the

record does not indicate whether the Defendants ever attempted to speak with Plaintiff's witness

Pat Kelly, who purportedly would have testified that Mr. Clark threatened to get even with

Plaintiff following Plaintiff's giving him a bad performance review.  Such evidence bears heavily

on whether probable cause existed to continue to pursue the criminal charges.

Finally, the record is tainted with what, arguably, may be fabricated evidence by

Defendant Brazile.   At a minimum, there exists a question of fact regarding whether Defendant

Brazile testified  truthfully in his affidavit that he found a remote control matching a stolen

television set in the search of Plaintiff's home.  This testimony is controverted by the affidavit of

Cross County Deputy Tommy Wright, submitted by Plaintiff.  Therein, Mr. Wright states that he

accompanied Defendants Brazile and Hauer during the search of Plaintiff's residence, that

Plaintiff consented to and cooperated fully with the search, and that nothing was found during the

search to link Plaintiff to the theft of the televisions from UP.  Mr. Wright specifically states that to the best of his knowledge, Mr. Bazille's statement that he found a remote control to one of the missing TV's is untrue.  Mr. Wright further opines that he never observed Mr. Bazille or Mr. Hauer make any effort to clear Mr. Thomas as a suspect.

The situation here is unusual in that the Defendant UP was not only the victim of the crime but also responsible for investigating it.  UP had its own agents, Defendants Mr. Bazile and Mr. Hauer, who possessed police powers to investigate crimes occurring on UP property.  Even though the Defendants ultimately turned information over to the Marion Police Department, it was the individual Defendants who were instrumental in determining the information that was (or was not) presented to the Department and to the state court judge responsible for issuing the arrest warrant.  If the individual Defendants fabricated or misrepresented the evidence or if they turned a blind eye to evidence which would have exonerated Plaintiff or cast serious doubt on his involvement in the theft, then such evidence is relevant to both the issue of probable cause and the issue of malice.

If Mr. Bazille fabricated evidence to justify the continued pursuit of criminal charges against Plaintiff, it certainly would be sufficient to permit a jury finding of malice.  Malice may be inferred from the reckless disregard of predictable harmful consequences.  See AMI 2218, Punitive Damages.

## CONCLUSION

The Court concludes that it would benefit from a full development of the factual record at trial, and therefore, it declines to make any rulings as a matter of law at this juncture.

IT IS THEREFORE ORDERED THAT Defendants' Motion for Summary Judgment (Docket No. 10) be, and it is hereby, DENIED.

IT IS SO ORDERED this <u>1st</u> day of December, 2005.

<u>/s/Garnett Thomas Eisele</u>
UNITED STATES DISTRICT JUDGE
